John Tomcsik et ux., complainants,

*v.*

Edward Kramer and the Metuchen Realty and Improvement Company, defendants.

[Decided September 30th, 1925.]

**Conveyances—Equitable Mortgage—Complainant Had Deed to Property Which He Gave to Another, Unrecorded, to Secure Loan—Other Loans Were Made by Another, and Original Loan Paid Off, the Deed Finally Passing Into Hands of the Other—Transaction Reviewed and Deed Held to be an Equitable Mortgage—Matter Referred to a Master for an Accounting.**

*Mr. Leo S. Lowenkopf,* for the complainants.

*Mr. Daniel H. Applegate* and *Mr. David M. Satz* (representing *Mr. Frederic M. P. Pearse*), for the defendant Edward Kramer.

*Mr. Leo Goldberger,* for the defendant Metuchen Realty and Improvement Company.

Mr. Goldberger—I move to dismiss the bill on the ground that there are no facts alleged in the bill where we are to be charged with any fraud or any collusion with Mr. Kramer. Furthermore, granting that there was some fraud, the Metuchen Realty Company has sold this property to the party in possession; there is no charge in the bill alleging that this party in possession knew of any of the so-called fraudulent transaction. Therefore, being an innocent purchaser, this bill would have no effect on the party who bought this property from the Metuchen Realty and Improvement Company.

Court—The Metuchen Realty and Improvement Company had notice of the whole transaction. You are making a motion on behalf of the Metuchen Realty Company?

Mr. Goldberger—Yes.

Court—The motion will be denied. I will hear the testimony.

BERRY, V. C. (orally).

The complainant Tomcsik has made a very definite statement up to this time to this effect; that he owned four lots; that in 1917 he traded these four lots to the Metuchen Realty and Improvement Company and took five lots and some four hundred and some dollars in exchange; that he only got a small portion of that money—something less than a hundred dollars, because he owed Greenbaum the difference, and Greenbaum kept that difference to repay him what he owed him, and he received a deed for five lots, which was given to him in the lawyer's office, and that deed he put in his pocket and kept there; the deed was unrecorded; he kept it for two months; after that he went back to Greenbaum and borrowed $300, and then Greenbaum asked him for security

and he gave him the unrecorded deed. Subsequently, he went to Kramer and borrowed $300, for which he got the check of $297, and with that money he intended to build an addition to his house. He lost the money, or a part of it, at least, and he went back to Kramer for $300 more, telling him that he wanted to pay that money to Greenbaum, and pay off Greenbaum $300 that he owed him. He claims that Kramer paid the $300 direct to Greenbaum and that he never got it. He also said that he made an application for a building and loan association mortgage. He does not know very definitely why that loan wasn't granted, but he agrees that he didn't get it. He afterwards borrowed another hundred dollars from Kramer, and all this time, so he says, Greenbaum had the unrecorded deed which he got when he exchanged the lots. That is the extent to which the testimony goes, as I understand it now. Whether he is right or not, will depend upon what some of the other witnesses say, I suppose.

\*     \*     \*     \*     \*     \*     \*     \*

BERRY, V. C. (orally).

The major portion of the facts in this case I recited this morning. I am not going to recite these particular facts. In announcing my decision the stenographer may repeat them for the purpose of this record at this time.

In addition to the facts that I recited, it appears by the testimony and other evidence submitted that the complainant had a loan account with Greenbaum for the Metuchen Realty Company and had a book in which were recorded payments on account of that loan account as they were made. This book was introduced in evidence. There was also an account book showing payments made to the defendant Kramer. It appears that the defendant Kramer made some advances to the complainant, and in 1919, according to his own testimony, and for his own protection, he induced the complainant to execute a paper, which has been introduced in evidence and marked *Exhibit D-2,* by which the complainant assigned his right, title and interest to the

five lots in question to the defendant Kramer. From my own examination of the complainant, I am satisfied that neither he nor his wife understood the purport of that paper when it was executed. The defendant Kramer testifies that he had it prepared by a lawyer; that he did not have the lawyer explain the meaning of the paper to the complainant, but that he sent it to the complainant by his son, and two days afterwards the complainant and his wife came to Kramer's store and executed the paper. Beyond question, these complainants, who are of low mentality, unfamiliar with the English language, and difficult to understand, did not appreciate the purport of that assignment when they made it. It appears that after that assignment was executed the defendant Kramer paid to the Metuchen Realty Company the sum of, approximately, $260, and obtained from the Metuchen Realty Company a deed conveying the five lots in question to Kramer. An inspection of the deed plainly discloses the fact that the date of the deed and the name of the grantee, and the date of the acknowledgment and the name of the grantee, as it appears on the endorsement of the deed, have all been changed since the deed was originally written. This deed, Kramer says, he received through the mail from the Metuchen Realty Company, and afterwards had it recorded in the Middlesex county clerk's office. This, to my mind, is the strongest corroboration of the complainant's story, which appears in the whole case, the complainant claiming that he received the deed in the lawyer's office at the time the exchange of properties was made, and this testimony stands undenied. He states that this deed was received and placed by him in his coat pocket and that he retained possession of it for some months afterwards, until he obtained a loan from Greenbaum or the Metuchen Realty Company, when he delivered it, the deed never having been recorded, to Greenbaum. Under these circumstances, it seems to me that I have no alternative but to advise a decree in favor of the complainant, directing in that decree that an account be taken of the moneys paid out by Kramer on ac-

count of this property, the moneys received by him for rents or otherwise. The record title still remains in Kramer, although there appears to be a contract of sale with the Metuchen Realty Company. The Metuchen Realty Company certainly had notice of the claim of the Tomcsiks, because under the facts as I find them that company had possession of Tomcsik's deed, and I believe changed the name of the grantee in that deed, or rather erased the name of the grantee in the deed and inserted Kramer's name in it when it was mailed to him. The rule in such cases is too plain to require any citation of authorities. At most the deed which the defendant Kramer has, and this assignment, even if it were a valid assignment, would constitute, in my judgment, an equitable mortgage. The rights of Tomcsik could not be foreclosed without foreclosing that equitable mortgage.

I will refer this matter to a master for the purpose of taking an account, as I have already indicated, and I will advise a decree for complainants.

The testimony on the part of Mr. Kramer is that he advanced $297, $300 and an additional sum of $263.37, and $100 in addition. While there is some doubt in my mind as to the correctness of that amount, yet I feel that the weight of the testimony, not in the number of witnesses, because they are evenly balanced, but I am rather inclined to believe that Mr. Kramer advanced the $300 in cash which he says he advanced. Although the complainant denies that, I think he did. I think Mr. Kramer is telling a straight story on that; so that, I think, there is no question that Mr. Kramer is entitled to a credit for the four different sums he paid, namely, the $297, the $300, the $263.37 and the $100. In addition to that he is entitled to a credit for whatever he has paid by way of repairs, interest or insurance. He is entitled to interest on his own advanced, including the taxes which he has paid. Whatsoever he has expended in money for repairs he is entitled to that. I will allow him for actual expenditures, but I cannot allow him for anything else.